UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, v. ROBERTO RIOS-BAUTISTA, Defendant. | Case No.: 19-cr-2883-BLM-BTM-1 **ORDER AFFIRMING JUDGMENT OF CONVICTION** **[ECF NO. 32]** |
|---|---|

Pending before the Court is Defendant Roberto Rios-Bautista's timely appeal of a sentence and conviction by a Magistrate Judge. (ECF No. 32). This Court has jurisdiction under 18 U.S.C. § 3402 and, for the reasons discussed below, will affirm his judgment of conviction.

## I. BACKGROUND

On July 30, 2019, Defendant was charged in an information with violating 8 U.S.C. § 1325(a)(1). (ECF No. 11). The Honorable Barbara L. Major held a bench trial on October 7, 2019 and found Defendant guilty as charged. (ECF No. 37). Defendant was sentenced to time served, and judgment was entered on October 7, 2019. (ECF No. 30). On October 9, 2019, Defendant timely appealed the conviction. (ECF No. 32).

At trial, the government presented the following evidence. In August 2018, Immigration and Customs Enforcement (ICE) Officer George Valdez was investigating Defendant and discovered that a removal order had been entered against him and that he had been removed through a port of entry. Officer Valdez later found that Defendant was living in Escondido, California. Officer Valdez surveilled what he believed to be Defendant's residence. Officer Valdez and his partner pulled over Defendant's vehicle after he left the residential complex on June 13, 2019. The officers were wearing bulletproof vests and shirts with "POLICE" written on the arms, and their firearms were visible but not drawn. Officer Valdez approached the driver's side of the vehicle and his partner approached the passenger side. He identified himself as an ICE officer and spoke with Defendant in Spanish. Officer Valdez asked Defendant for his name, date of birth, and an identification card.

Then he asked if Defendant entered the United States legally, and Defendant said "no." The officer asked if Defendant had previously been removed from the U.S., and Defendant said "yes." Officer Valdez then arrested Defendant. He reinstated Defendant's prior removal order and informed him that he could not return to the U.S. Defendant was removed from the U.S. on June 13, 2019.

On July 3, 2019, Defendant was arrested about a mile from the United States-Mexico border. He was found lying in the shade of a bush in a remote, sparsely populated area known for illegal entry. Defendant admitted to Border Patrol Agent Mauler that he was a Mexican citizen and had entered the United States illegally.

Defendant now raises three claims on appeal: first, that his statements to Officer Valdez should have been suppressed for lack of *Miranda* warnings; second, that the border patrol agent improperly translated Defendant's statements from Spanish to English; and third, that the evidence of his prior arrest was improperly admitted. Each claim is addressed in turn.

## II. DISCUSSION

### 1. Defendant's statements were properly admitted.

Whether a person is in custody such that *Miranda* warnings are required is a question reviewed de novo. *See United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002). A person is in custody if "a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981). "Pertinent areas of inquiry include the language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual." *Id.*

Under Ninth Circuit precedent, Defendant was not in custody when he answered Officer Valdez's questions.[1] "[W]hen border patrol agents stop a car based on reasonable suspicion that individuals are illegally present in the country and question the occupants regarding their citizenship and immigration status, the occupants are not in custody for *Miranda* purposes." United States v. Medina-Villa, 567 F.3d 507, 520 (9th Cir. 2009). That is essentially what occurred here. There is no dispute here regarding reasonable suspicion, and *Medina-Villa* provides that *Miranda* warnings were not required here. In fact, in *Medina-Villa*, the Ninth Circuit ruled that the defendant was not in custody "[e]ven though the border patrol agent prevented [him] from leaving the parking lot by blocking his car, approaching it with his gun drawn, and interrogating him about his citizenship

---

[1] Defendant does not argue that the officer lacked reasonable suspicion for the stop, and in any event the officer had such suspicion based on his investigation showing that Defendant had previously been removed from the U.S. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (ruling that officers "may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country").

and immigration status."

*Medina-Villa* squarely forecloses Defendant's claim that he was in custody for *Miranda* purposes when Officer Valdez pulled him over and questioned him about his citizenship and immigration status. To the extent Defendant argues that he was in custody for *Miranda* purposes based on the allegation that the officer intended to arrest him, that argument fails because the officer's subjective intent is generally irrelevant. *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."). Thus, Defendant's statements to the officer were properly admitted.

### 2. Agent Mauler's testimony as to Defendant's statements was properly admitted.

"[E]videntiary rulings during trial are reviewed for an abuse of discretion," *United States v. Pino-Noriega*, 189 F.3d 1089, 1097 (9th Cir. 1999). Because Defendant did not raise these specific objections below, review is for plain error. *See, e.g.*, *United States v. Gomez-Norena*, 908 F.2d 497, 500-01 (9th Cir. 1990) (explaining that specific objections are required to preserve an issue for appeal and reviewing a 403 argument for plain error because it was not specifically raised below). "The plain-error standard of review dictates that reversal is warranted only where there has been (1) error; (2) that is plain; (3) that affects substantial rights; and (4) where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Pelisamen*, 641 F.3d 399, 404 (9th Cir. 2011).

Defendant argues for the first time that the Agent Mauler's in-court translation of Defendant's statements was inadmissible hearsay. But that argument is incorrect. When a witness relays the defendant's out-of-court statements based on the translation of someone who does not testify, then there may be a hearsay

problem if the translated statements are not considered the statements of the defendant. *See, e.g.*, *United States v. Nazemian*, 948 F.2d 522, 525-27 (9th Cir. 1991). That analysis is inapplicable in this case because there was no out-of-court translator.

Rather, here, the agent's testimony was not hearsay because the underlying statements—Defendant's statements—are admissible as statements of an opposing party, Fed. R. Evid. 801(d)(2)(A) (providing that opposing party's statements are not hearsay), and the agent's opinion testimony on the English meaning of Defendant's statements is not hearsay at all because it is an in-court statement, not an out-of-court statement, Fed. R. Evid. 801(c)(1) (defining hearsay such that in-court opinions are not hearsay). In any case, any error does not satisfy the plain-error standard.

Defendant also argues for the first time that the agent needed to be qualified as an expert to translate Defendant's statements. But without question, the admission of the English meaning of Defendant's statements did not "seriously affect[] the fairness, integrity, or public reputation of [the trial]." *See, e.g.*, *Pelisamen*, 641 F.3d at 404.

The incriminating admissions that Defendant made to the agent's questions essentially consisted of three words: "Mexico," "no," and "yes." The admission of the English translation of those words by a border patrol agent with experience conducting interviews in Spanish does not affect the fairness, integrity, or public reputation of judicial proceedings—and certainly not seriously. The likely accuracy of the agent's understanding of those words is high. The agent has been working in border patrol since 2008—when he took a course on Spanish—and conducts interviews in Spanish multiple times a week. The questions were routine ones that he asks in Spanish. The Magistrate Judge was aware of the agent's foundation for his Spanish-speaking ability. It was proper and fair for the judge to rely on the agent's understanding of the English translation of the words "Mexico," "yes," and

"no."

In short, the admission of the agent's testimony on Defendant's statements was neither an error nor a plain error seriously affecting the fairness, integrity, or public reputation of the trial. To be clear, the result would be the same even if the plain error standard did not apply. The admission of the agent's interpretation of three words—Mexico, yes, and no—was not an error at all. *See United States v. Lucas-Hernandez*, No. 19-MJ-24522-LL-TWR, 2022 U.S. Dist. LEXIS 89039, *12-13 (May 17. 2022) (ruling that Agent Mauler's understanding of Spanish was based on personal knowledge and thus was not expert testimony under Rule 702).

### 3. The evidence of Defendant's prior arrest and removal orders were admissible.

Last, Defendant claims the government improperly offered propensity evidence regarding his prior arrest and removal orders. But that evidence was highly relevant and properly admitted.

Federal Rule of Evidence 404(b) generally prohibits the admission of prior acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." When "introducing other act evidence, the government always must show: (1) that the act tends to prove a material element or point, (2) that the act is not too remote in time from the crime charged, and (3) that the evidence is sufficient to support a finding that the defendant committed the subsequent act." *United States v. Preston*, 873 F.3d 829, 840 (9th Cir. 2017). 404(b) is a rule "of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove *only* criminal disposition." *United States v. Rocha*, 553 F.2d 615, 616 (9th Cir. 1997) (per curiam).

Here, evidence of Defendant's prior arrest and removals was highly relevant

evidence of his intent to enter the United States free from official restraint—an essential element of 8 U.S.C. § 1325(a)(1). *See, e.g., United States v. Argueta-Rosales*, 819 F.3d 1149, 1156 (9th Cir. 2016) ("In order to convict [the defendant], the government was required to prove beyond a reasonable doubt that [he] crossed into the United States with the specific 'intent to enter the country free from official restraint.'" (citation omitted)). This was not evidence of a prior act to show propensity. It is not propensity evidence in a § 1325(a)(1) prosecution to show that the defendant was already removed from the United States. Rather, prior removal orders are relevant to a defendant's intent to enter free from official restraint. *See United States v. Valderama-Mancilla*, 851 Fed. Appx. 42, 43 (9th Cir. 2021) (explaining that "prior removals were also probative of [the defendant's] specific intent to enter free from official restraint—the main issue at trial"). Because the evidence was not propensity-based and instead highly relevant evidence of this crime—it was intrinsic evidence and admissible without a 404(b) analysis. *See generally United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1091 (9th Cir. 2007) ("Rule 404(b) does not exclude evidence forming an essential element of the charged offense.").

    In any case, even assuming otherwise, the evidence was still admissible under a 404(b) analysis (1) to show intent to return to his home in Escondido, a material issue in the case; (2) because the prior arrest was not too remote—only several weeks prior—from the instant entry; and (3) because there was sufficient evidence on Defendant's prior arrest and removals. Thus, this evidence was admissible under 404(b). *See Preston*, 873 F.3d at 840. Moreover, because the Magistrate Judge acknowledged that the evidence would not be admitted for propensity purposes, there was no Rule 403 or 404 issue.

    In short, the evidence of Defendant's prior arrest and removals was highly relevant and properly admitted.

//

## III. CONCLUSION

For the reasons stated, Defendant's appeal is without merit, and his judgment of conviction is **AFFIRMED**.  (ECF No. 32).

**IT IS SO ORDERED.**

Dated:  June 29, 2023

                                             _____
Honorable Barry Ted Moskowitz
United States District Judge